UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER RAMBARRAT, an infant under the age of 18, by his mother and legal guardian, KAREN RAMBARRAT,<br><br>Plaintiff,<br><br>- *against* -<br><br>THE UNITED STATES of AMERICA,<br><br>Defendant. | 04 Civ. 6115 (LMS)<br><br>DECISION and ORDER |

Infant plaintiff Alexander Rambarrat, by his mother and legal guardian Karen Rambarrat (herein, "Plaintiff"), commenced this civil lawsuit under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671-2680 (herein, "FTCA"), against the United States of America (herein, "Defendant") for injuries he sustained to his right knee in an accident with a United States Postal Service (herein, "USPS") truck on September 29, 2001. See Plaintiff's Complaint (herein, "Compl.") at ¶17. Defendant moves this Court for summary judgment on several grounds, focusing primarily on the argument that Plaintiff has failed to demonstrate he suffered a "serious injury" within the meaning of the term as defined by New York State's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. VEH. & TRAF. LAW §5101 *et seq*. (herein, "No-Fault Law"). Accordingly, issues of negligence and fault are not addressed in this motion; the only issues considered by the Court in this motion are whether the Plaintiff can recover non-economic loss for his injuries under New York's No-Fault Law under §5104(a), and whether the Plaintiff has submitted sufficient evidence of economic loss in excess of $50,000. The parties have consented to the undersigned pursuant to 28 U.S.C. §636(c) for all purposes, including resolution

of dispositive motions and trial. For the following reasons, I conclude that the Plaintiff has failed to establish that he suffered a "serious injury" as a result of the accident with the USPS truck as defined by N.Y. VEH. & TRAF. LAW §5102(d), and that Defendant's motion for summary judgment should be granted *in toto* as a matter of law.

## BACKGROUND

A.  Facts

The parties do not dispute the following basic facts that are material to a decision in this case.[1]

On September 29, 2001, infant Plaintiff Alexander Rambarrat, then age 8, was involved in an accident with a USPS truck in Yonkers, New York while riding his bicycle. See Compl. at ¶¶16-18. Though it is unclear what exactly happened – either the Plaintiff collided with the USPS truck because he could not control his bicycle, or the USPS truck collided with the Plaintiff – after the accident, Plaintiff complained of pain in his right leg and knee. See Defendants's Rule 56.1 Statement of Undisputed Material Facts (herein, "Def's 56.1 Statement") at ¶6. Plaintiff did not suffer head trauma or a loss of consciousness. Id. After the paramedics conducted an initial physical assessment of the Plaintiff at the scene of the accident, Plaintiff was transported to St. John's Riverside Hospital emergency room, where x-rays revealed that the Plaintiff had not suffered any fractured bones. See Def's 56.1 Statement at ¶12. The notes taken during the emergency room visit also reveal that the Plaintiff's "flexion and extension of the right knee was intact." See Def's 56.1 Statement at ¶11. The emergency room doctor diagnosed

---

[1] As discussed, infra, Plaintiff's failure to comply with the Local Rules of this District, and the Defendant's proper citation to admissible evidence in its Rule 56.1 Statement of Undisputed Material Facts, both lead me to conclude that the Defendant's Local Rule 56.1 Statement should be adopted *in toto* as the undisputed facts of this case.

the Plaintiff with multiple abrasions, a contusion, and a sprain, see Def's 56.1 Statement at ¶13, and prescribed 10 cc's of Tylenol and codeine, see Def's 56.1 Statement at ¶14. Plaintiff was released from the hospital that same day.

Plaintiff was next examined by Dr. Nazar Sayegh on October 1, 2001, after Plaintiff complained of pain in his right knee. See Def's 56.1 Statement at ¶15. Another x-ray of the Plaintiff's right leg confirmed that Plaintiff did not suffer a fracture. See Def's 56.1 Statement at ¶18. Moreover, similar to the emergency room finding on September 29, 2001, Dr. Sayegh noted that Plaintiff's range of motion of his right knee was not significantly affected. See Def's 56.1 Statement at ¶19. Despite these findings, Dr. Sayegh referred Plaintiff to an orthopedic surgeon, Dr. Jean Kalache, for review that same day. See Def's 56.1 Statement at ¶20. After reviewing the x-rays provided by Plaintiff's mother, Dr. Kalache concurred with Dr. Sayegh's assessment that Plaintiff did not suffer from a fracture and that the range of motion of his right knee was only "slightly restricted, mainly into full extension." See Def's 56.1 Statement at ¶23, 24. Dr. Kalache recommended that Plaintiff stay home from school for one week. See Def's 56.1 Statement at ¶26.

Dr. Kalache followed up with the Plaintiff on October 10, 2001, at which time she noted again that Plaintiff's range of motion of his right knee was only slightly restricted, and that Plaintiff only complained of minimal pain and discomfort. See Def's 56.1 Statement at ¶28. Dr. Kalache recommended that Plaintiff have an MRI on his right knee, see Def's 56.1 Statement at ¶29, which subsequently revealed that Plaintiff suffered from a torn anterior cruciate ligament (herein, "ACL"), see Def's 56.1 Statement at ¶30. Dr. Kalache's reading of the MRI also led her to conclude that Plaintiff also suffered from a tear in the lateral meniscus of the right knee. See Def's 56.1 Statement at ¶30. This conclusion, however, was ultimately disproved. See Def's

3

56.1 Statement at ¶30. On a subsequent visit on December 28, 2001, Dr. Kalache noted no difference between Plaintiff's left knee and his injured right knee. See Def's 56.1 Statement at ¶32.

Plaintiff met with Dr. Sayegh again on September 16, 2002, at which time Plaintiff expressed no discomfort, and Dr. Sayegh found no loss of range of motion in Plaintiff's right knee or a reduction in strength. See Def's 56.1 Statement at ¶37. Despite these positive findings, Plaintiff began complaining of "popping of the knee associated with pain" to Dr. Kalache in April of 2003. See Def's 56.1 Statement at ¶40. Upon examination, however, Dr. Kalache once again found Plaintiff's right knee to be in good condition and without a limited range of motion. See Def's 56.1 Statement at ¶41. Dr. Kalache recommended that Plaintiff use a knee brace to compensate for any weakness caused by the torn ACL, but advised against surgery because of the Plaintiff's young age. See Def's 56.1 Statement at ¶43.

In September of 2003, Plaintiff again voiced complaints of pain in his right knee. See Def's 56.1 Statement at ¶47. Dr. Kalache, after reminding Plaintiff that he should be wearing the knee brace – which he was not – referred Plaintiff to a pediatric orthopedic surgeon, Dr. Robert Cristofaro, for possible surgery on Plaintiff's erroneously diagnosed lateral meniscus tear. See Def's 56.1 Statement at ¶50. Similar to Dr. Kalache, Dr. Cristofaro also believed Plaintiff's knee injury could be managed with the use of a knee brace and advised against surgery. See Def's 56.1 Statement at ¶54. In February of 2004, however, Dr. Cristofaro performed an arthroscopy on Plaintiff's right knee, which confirmed the tear in Plaintiff's ACL, see Def's 56.1 Statement at ¶60, but also confirmed that Plaintiff did not suffer from a torn lateral meniscus as previously believed, see Def's 56.1 Statement at ¶65. During the pre-operative evaluation of the Plaintiff on February 6, 2004, Plaintiff himself indicated that he

suffered no pain in his right knee, see Def's 56.1 Statement at ¶58, and no range of motion or strength deficiencies were noted, see Def's 56.1 Statement at ¶59.

After the arthroscopy, Plaintiff underwent physical therapy, see Def's 56.1 Statement at ¶73, and at a February 20, 2004, follow-up meeting with Dr. Cristofaro, the doctor again noted the absence of any indication of a loss of range of motion in Plaintiff's right knee, see Def's 56.1 Statement at ¶77. Plaintiff was again examined by Dr. Cristofaro in April of 2004, at which time his assessment of the Plaintiff was the same once again. See Def's 56.1 Statement at ¶¶81, 82.

Plaintiff returned to Dr. Cristofaro in October of 2004 complaining of pain in his right knee during intense physical activity only. See Def's 56.1 Statement at ¶85. At this time, Dr. Cristofaro again noted no loss of range of motion or strength in Plaintiff's right knee. See Def's 56.1 Statement at ¶88.

After commencement of the instant lawsuit, Plaintiff was examined by Dr. David Weiss at the Defendant's request. See Def's 56.1 Statement at ¶95. Like Doctors Sayegh, Kalache and Cristofaro, Dr. Weiss also found no reduction in Plaintiff's range of motion or strength in his right knee. See Def's 56.1 Statement at ¶¶98, 99.

B. Procedural History

Plaintiff commenced the instant lawsuit on August 4, 2004, naming both the United States of America and Pio Franquelli as defendants. Additionally, Karen Rambarrat, Plaintiff's mother and legal guardian, brought her own cause of action against the defendants for the loss of her son's society and companionship as a result of his injuries. On December 3, 2004, the Honorable Colleen McMahon, United States District Judge, granted defendants' Rule 12(b)(1) motion to dismiss the claim against Pio Franquelli for a lack of subject matter jurisdiction, and to dismiss Karen Rambarrat's complaint in its entirety for a lack of subject matter jurisdiction. See

5

Rambarrat v. United States, 347 F. Supp. 2d 6 (S.D.N.Y. 2004). Judge McMahon held that Pio Franquelli, as an employee of the federal government, was entitled to absolute immunity from suit, Rambarrat, 347 F. Supp. 2d at 8, and found that Karen Rambarrat had failed to administratively exhaust her claims of loss of society and companionship against the government, id. at 9.

After a period of pretrial discovery, Defendant filed the instant motion, seeking summary judgment on all of Plaintiff's claims on the following grounds: (1) that the Plaintiff's injuries did not fall with the statutory definition of "serious injury," N.Y. VEH. & TRAF. LAW §5102(d); (2) that the Plaintiff has not established that the accident with the USPS vehicle caused the Plaintiff's injuries to his right knee; and (3) that Plaintiff has not submitted sufficient evidence establishing an economic loss in excess of $50,000. See Docket #18, Memorandum of Law in Support of Defendant's Motion for Summary Judgment, (herein, "Def's Mot.") at 2.

For the following reasons, I conclude that because the injury Plaintiff has endured does not fall within the category of "serious injury" as defined by the New York State No-Fault Law, Defendant's motion for summary judgment on this ground should be granted as a matter of law. As such, this Court need not address the Defendant's argument that Plaintiff has failed to prove causation. Additionally, because the Plaintiff has submitted no evidence establishing he has endured an economic loss in excess of $50,000, Defendant's motion for summary judgment on this ground is granted as well.

## DISCUSSION

A. <u>Summary Judgment and Local Rule 56.1</u>

    1.    Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 320-23 (1986). A fact is "material" when it may affect the outcome of a case under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u> A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. <u>Id.</u> at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. <u>Id.</u>

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " <u>Berger v. United States</u>, 87 F.3d 60, 65 (2d Cir. 1996) (quoting <u>Celotex</u>, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." <u>Trebor Sportswear Co. v. The Limited Stores, Inc.</u>, 865 F.2d 506, 511 (2d Cir.1989) (quoting <u>Anderson,</u> 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences

7

in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

    2.    Local Rule 56.1

Pursuant to the Local Rules for the Southern and Eastern Districts of New York, a moving party must attach a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." See Local Rule 56.1(a). A similar requirement is imposed upon the party opposing the motion for summary judgment. See Local Rule 56.1(b) (requiring the party opposing a motion for summary judgment to identify the material facts which it contends are in dispute). Should the non-moving party fail to respond to the facts alleged by the moving party to be undisputed, those facts "will be deemed to be admitted for purposes of the motion . . . ." Local Rule 56.1(c).

Thus, as a general rule, the Court may accept as true the material facts asserted by the moving party in an unopposed Rule 56.1 statement. See Gubitosi v. Kapica, 154 F.3d 30, 31 n.2 (2d Cir. 1998). The Second Circuit has cautioned, however, that the opposing party's failure to comply with the local rules does not absolve the moving party from meeting its own burden of proof in the motion for summary judgment. See Holtz v. Rockefeller Co., 258 F.3d 62, 72-74 (2d Cir. 2001). The Holtz court also noted that a district court has "broad discretion" to determine whether to overlook noncompliance with the local rules. Id. at 73. Synthesizing the

8

spirit of the Local Rules, and the Holtz court's decision, failure to respond to a moving party's Rule 56.1 Statement may mean that the uncontested facts contained therein will be assumed to be true for the purposes of the motion if such facts are properly supported by citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

As mentioned, supra, Plaintiff did not respond to Defendant's Rule 56.1 Statement as required by Local Rule 56.1(b). Under Local Rule 56.1(c), the asserted undisputed facts may be assumed to be such for purposes of this motion. In light of this Court's "broad discretion" to determine the effect of noncompliance with the Local Rules, Holtz, 258 F.3d at 73, and because the Defendant's Rule 56.1 Statement is replete with citations to admissible evidence, I find that the uncontested facts asserted in the Defendant's Rule 56.1 Statement should be assumed to be true for the purposes of this motion.

B.  Federal Tort Claims Act Provisions

Plaintiff brings suit for his personal injury stemming from an accident with a USPS truck under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671-2680. The FTCA provides in relevant part that, "[t]he United States shall be liable, respecting the provisions of [Title 28] relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. §2674. Moreover, the FTCA vests exclusive jurisdiction over claims brought under the FTCA with the federal courts, and provides that "the law of the place where the act or omission occurred" giving rise to the dispute governs, 28 U.S.C. §1346(b). Thus, the FTCA is a statutory waiver of the federal government's sovereign immunity, vests jurisdiction exclusively with the federal courts to adjudicate claims brought under it, and provides that the law of the

state where the cause of action occurred applies. In this case, because the accident occurred in New York, New York State's No-Fault Law applies to the current matter.

C.         <u>New York's No-Fault Statutory Provisions Regarding a "Serious Injury"</u>

Under New York State's No-Fault Law, there is a qualified prohibition against seeking recovery for non-economic loss. See N.Y. VEH. & TRAF. LAW §5104(a). Section 5104(a) provides that "in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss." Section 5102(d) enumerates the nine categories of serious injury the New York State legislature has determined qualify for additional recovery. If a victim's injuries do not fall within one of these nine categories of "serious injury," the victim is barred, as a matter of law, from seeking recompense for his or her injuries in a court of law. New York's No-Fault system is designed to reduce the number of minor or insignificant claims of injury arising from motor vehicle accidents entering the court system. See <u>Byrne v. Oester Trucking, Inc.</u>, 386 F. Supp. 2d 386, 392-93 (S.D.N.Y. 2005) ("the intent of the No-Fault Law is to weed out frivolous claims and to limit recovery to significant injuries . . .").

Thus, in order for the Plaintiff to maintain a cause of action against the Defendant for non-economic injury under the New York No-Fault Law, the Plaintiff must have suffered a "serious injury" within the meaning of the statute. Defendant argues, however, that Plaintiff's torn ACL does not fit within any of the nine enumerated categories of §5102(d). The issue of whether the Plaintiff sustained a serious injury within the meaning of §5102(d) is a threshold question for the Court to determine. <u>Licari v. Elliott</u>, 57 N.Y.2d 230, 236 (1982). On a motion for summary judgment made by the Defendant, the Defendant bears the initial burden of proof to

show that the Plaintiff has failed to allege or establish that he has endured a "serious injury" under §5102(d). See Gaddy v. Eyler, 79 N.Y.2d 955, 956-57 (1992). Assuming the Defendant can establish this burden, the Plaintiff then has the opportunity to refute the Defendant's showing. Id. at 957. If the Plaintiff cannot refute the Defendant's showing that the Plaintiff did not suffer a "serious injury," summary judgment for the Defendant is proper. Id.

I conclude that, as a matter of law, the Defendant has established that the Plaintiff did not suffer a serious injury within the meaning of the statute, and that the Plaintiff has not refuted this showing. As argued by the Defendant in its motion for summary judgment, only three of the nine enumerated categories of serious injury in §5102(d) are applicable to this instant lawsuit: permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury which prevents the Plaintiff from performing substantially all of the material acts of his or her daily activities for more than 90 of the 180 days since the occurrence of the accident. The Plaintiff does not deny that the other six categories are inapplicable.[2]

Regardless of how Plaintiff seeks to have his injury categorized as under §5102(d), the Plaintiff must establish sufficient evidence of objective medical findings to demonstrate the existence of an injury by a preponderance of the evidence. See Toure v. Avis Rent-a-Car Systems, Inc., 98 N.Y.2d 345, 350 (2002); Scheer v. Koubek, 70 N.Y.2d 678, 679 (1987). In meeting this standard, the Plaintiff must provide objective evidence of his physical limitations.

---

[2] In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff only argues that his injury is a "serious injury" as defined under the "significant limitation" category of §5102(d). See Docket #28, Memorandum in Opposition to Summary Judgment (herein, "Opp.") at 2-4. Plaintiff neither alleges that one of the first six categories is applicable to the instant matter, or that the "permanent consequential limitation" or "medically determined injury" categories apply in this case.

See Ebewo v. Martinez, 309 F. Supp. 2d 600, 604-05 (S.D.N.Y. 2004). Such objective evidence may include a quantitative analysis demonstrating the degree of his physical injuries and limitations, or may consist of a qualitative assessment comparing the Plaintiff's current limitations to his otherwise normal function. See Waller v. Williams, 03 Civ. 8305 (GEL), 2005 U.S. Dist. LEXIS 12221, at *5-6 (S.D.N.Y. June 20, 2005) (quoting Toure, 98 N.Y.2d. at 350-51). In either case, subjective complaints of pain, alone, are insufficient to substantiate an injury as "serious" under the New York No-Fault schema. See Gaddy, 79 N.Y.2d at 957.

Plaintiff has failed, however, to meet these standards. On repeated occasions – starting on the day of the accident, and culminating with the Defendant's expert diagnosis – doctors have noted that neither the Plaintiff's strength nor his range of motion in his right knee were compromised because of the accident. See, e.g., Def's 56.1 Statement at ¶¶11, 15, 23-24, 37, 58-59, 98-99 (each stating that the Plaintiff's range of motion of his right knee was either normal or only slightly impaired). Though the Plaintiff has expressed subjective complaints of pain in his knee, at no time has this pain inhibited the Plaintiff's activities. See Def's 56.1 Statement at ¶125-27 (Plaintiff participated in physical education classes in school); ¶133 (Plaintiff engaged in physical activities during the summer of 2002). The reports of his own physicians, and the report of the Defendant's medical expert, show consistently that the Plaintiff's range of motion in his right knee was either normal, or only slightly impaired. Innumerable courts have articulated that slight, minor or trivial limitations are insufficient as a matter of law to qualify as "serious" under §5102(d). See Gaddy, 79 N.Y.2d at 957 (citing Licari, 57 N.Y.2d at 236 and Scheer v. Koubek, 70 N.Y.2d 678 (1987)).

In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff submits an additional affidavit of Dr. Robert Cristofaro. See Declaration of Andrew Bersin, Ex. 2, Affidavit

of Robert Cristofaro, M.D., dated December 28, 2005 (herein, "Cristofaro Affidavit"). In this affidavit, Dr. Cristofaro declares that Plaintiff's torn ACL "will not allow his right leg to function normally but for this injury." See Cristofaro Affidavit at ¶4. Additionally, Dr. Cristofaro argues that "[t]he fact that he [the Plaintiff] can have a full range of motion or does not experience constant pain in the knee does not mean it is not a substantial injury," Cristofaro Affidavit at ¶4, and concludes that the Plaintiff's injury should be classified as one of consequence, rather than mild, id.

Unfortunately, Dr. Cristofaro's December 2005 affidavit is not supported by any objective findings. In his June 30, 2005, declaration, Dr. Cristofaro stated that during several visits with the Plaintiff, he never noted a limited range of motion in the Plaintiff's right knee or noticed atrophy or weakness. See Docket #22, Declaration of Joseph Pantoja, Ex. 8 (Declaration of Dr. Robert Cristofaro, dated June 30, 2005) (herein, "Cristofaro Declaration") at ¶7. Moreover, Dr. Cristofaro avers that he told the Plaintiff to use his leg as he felt best, and that to the best of his own knowledge, the Plaintiff resumed "full activity" on March 5, 2004. See Cristofaro Declaration at ¶18. Moreover, Dr. Cristofaro's conclusions that Plaintiff's injury should be classified as substantial or "of consequence" holds no bearing on this Court when determining whether the Plaintiff has carried his burden of proof as a matter of law. See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule, an expert's testimony on issues of law is inadmissible.") (citation omitted); see also McCormick on Evidence, 5th Ed., §12 (Federal Rules of Evidence do not permit opinion on matters of law). In order for the Plaintiff to recover under the statute, he must present sufficient evidence of objective medical findings to demonstrate the existence of his serious injury; Plaintiff's own doctor's conclusion that his injury is serious does not elevate Plaintiff's injury into one of the

13

nine enumerated categories of serious injury articulated in §5102(d), absent some objective medical support for the assertion.

In his Affirmation in Opposition (herein, "Bersin Aff."), see Docket #28, Plaintiff's counsel argues that "[t]he law is well settled that a motion for summary judgment should be granted only rarely in an automobile negligence case," see Bersin Aff. at ¶8 (citing Andre v. Pomeroy, 35 N.Y.2d 361 (1974)), and that "[s]ummary judgment may not properly be invoked in automobile accident cases, except in rare instances, because very often there is a question of whether each driver has exercised due care . . .," see Bersin Aff. at ¶9 (citing Ortiz v. Knighton, 219 N.Y.S.2d 802 (N.Y. App. Div. 1969)). While these are correct statements of automobile negligence law under the case law of the New York state courts, they are inapplicable to the current case.

As noted at the outset of this Order, issues of negligence and fault are not before this Court on the present motion; the only issues addressed are whether the Plaintiff has suffered a "serious injury" within the meaning of the term as defined by N.Y. VEH. & TRAF. LAW §5102(d), and whether the Plaintiff has presented evidence of economic damages in excess of $50,000. Thus, the New York courts' admonition that summary judgment is inappropriate in cases involving automobile negligence is not germane to the present motion. Additionally, as a general matter, the Federal Rules of Civil Procedure, and the accompanying case law interpreting such procedural requirements, not the state rules of civil procedure, govern the instant lawsuit. See Carter v. United States, 333 F.3d 791, 794 (7th Cir. 2003) ("The court that the Plaintiff sued in was federal court, not . . . state court, and the procedures it applies are federal, not state, procedures, regardless of the source of the substantive rules in the case.").

In a final attempt to convince this Court to deny Defendant's motion for summary judgment, Plaintiff suggests that this Court should hold, as a matter of law, that a torn ACL qualifies as a serious physical injury under §5102(d). See Opp. at 4. In the absence of any similar holding from New York State courts, I decline to so hold. As made clear by the New York State courts, the New York No-Fault statutory scheme was developed in an effort to reduce the number of lawsuits seeking redress for *de minimis* injury. It is not within the providence of this Court, a federal district court applying New York law pursuant to the Congressional directive contained within the FTCA, to create a new category of serious injury colorable under New York's No-Fault Law out of whole cloth. If Plaintiff believes that a torn ACL, absent any objective medical findings of the limitations or seriousness of such an injury, should be considered "serious" under New York law, such an aspiration is directed better toward the New York State legislature than this Court.

Ironically, there are few reported cases addressing a torn ACL under New York's No-Fault Law. The closest reported case the undersigned has been able to locate is Rosario v. Universal Truck & Trailer Service, Inc., 779 N.Y.S.2d 1, 3 (N.Y. App. Div. 2004), in which the Appellate Division, First Department found that a torn ACL, supported by proper medical evidence as to the percentage of loss of the range of motion suffered by the Plaintiff, was enough to withstand a motion for summary judgment. The facts of Rosario, however, are not the facts of this case. In the present case, though the Plaintiff suffers from a torn ACL, the Plaintiff has not put forth objective medical findings evincing any limitations he suffers as a result of this injury. Absent either a quantitative or qualitative showing of the Plaintiff's limitations – which was provided in Rosario – this Court cannot hold that a torn ACL, alone, is a serious injury under the New York No-Fault Law.

Thus, because the Plaintiff has failed to refute the Defendant's showing that the Plaintiff's injury does not come within the ambit of "serious injury" as defined by N.Y. VEH. & TRAF. LAW §5102(d), the Defendant's motion for summary judgment as to Plaintiff's claim for non-economic damages based upon a "serious injury" is granted.

D.     Additional Grounds Asserted by Defendant in Support of Summary Judgment

In addition to arguing that Plaintiff has not suffered a "serious injury" compensable under §5104(a), Defendant also argues that the Plaintiff has failed to establish that the accident with the USPS truck caused the Plaintiff's injuries, and submits that the Plaintiff has presented insufficient evidence for an award of economic damages in excess of $50,000.[3] See Def's Mot. at 2.

In light of this Court's determination that the Plaintiff has failed to establish that he has suffered a "serious injury," it need not reach the issue of causation. As to Plaintiff's claim of economic loss in excess of $50,000, see Compl. at ¶23, Plaintiff neither has submitted evidence of such expenses, nor has opposed Defendant's motion for summary judgment on this ground. See Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (only arguing that Plaintiff's injury should be considered a "serious injury" under the "significant limitation" category of N.Y. VEH. & TRAF. LAW §5102(d)). Accordingly, Defendant's motion for summary judgment on this claim is granted as well.

---

[3] Under N.Y. VEH. & TRAF. LAW §5104(a), a Plaintiff cannot recover economic damages stemming from his or her personal injuries unless the Plaintiff proves that such economic damages, as defined by N.Y. VEH. & TRAF. LAW §5102(a), are in excess of $50,000. See Ventra v. United States, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000) (citing N.Y. VEH. & TRAF. LAW §§5102(a), 5104).

## **CONCLUSION**

For the foregoing reasons, the Defendant's motion for summary judgment is granted in its entirety.

Dated:     March 14, 2006
           White Plains, New York

**SO ORDERED**

_____
Lisa Margaret Smith
Chief Magistrate Judge
Southern District of New York